**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **SAMATHA LYNN HANKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No.:** |
| **MICHAEL J. ASTRUE,** | ) | **4:11-CV-2426-RDP** |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF DECISION**

Plaintiff Samatha Lynn Hankins brings this action pursuant to Title 42, United States Code, Section 405(g), seeking review of the decision by the Commissioner of the Social Security Administration denying her claim for disability and Disability Insurance Benefits ("DIB"). (Tr. 71). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the final decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed her application for a period of disability and DIB on April 3, 2007 (Tr. 54), alleging onset of disability as of February 17, 2006. (Tr. 101). Plaintiff's application was denied by the Social Security Administration on July 26, 2007. (Tr. 55). Plaintiff then requested and received a hearing before Administrative Law Judge Jerry M. Lang ("ALJ") on September 29, 2009. (Tr. 61, 70). In his decision dated November 25, 2009, the ALJ determined that Plaintiff is not disabled under §§ 216(i) and 223(d) of the Social Security Act (the "Act"). (Tr. 23). After the Appeals Council denied Plaintiff's

request for review of the ALJ's decision (Tr. 1, 5), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was forty-two years old at the time of the hearing and has a high school equivalency diploma. (Tr. 33, 113, 147). Her past relevant work has been in the poultry industry where she worked on a poultry processing production line and also as a quality assurance inspector. (Tr. 46, 107). Plaintiff claims she is unable to work due to anxiety and depression issues, panic disorder, uncontrolled blood pressure, mitro valve prolapse, degenerative disk disease, and irritable bowel syndrome.  (Tr. 106).

Plaintiff was examined by Dr. Larry Parker of the Spine Center at SportsMed on May 11, 2004. (Tr. 164). Dr. Parker determined that Plaintiff had a "symptomatic lumbar radiculopathy with significant lumbar disc herniation at L5-S1." (Tr. 165). Plaintiff also has medical records from the Guntersville Family Practice Clinic that cover visits from February 28, 1997 to May 18, 2005. (Tr. 169-201). However, these records cover a period before Plaintiff's onset of disability and reveal nothing of relevance to this decision.

Plaintiff's records from Marshall Medical Center North span from May 18, 2005 to April 5, 2007. (Tr. 205-54). The records from these visits present conflicting information concerning the severity of Plaintiff's gastrointestinal problems. Plaintiff underwent a colonoscopy with the removal of a polyp on August 24, 2005. (Tr. 220). However, other tests conducted in 2005 showed no sign of abnormality in the abdomen and normal gastric emptying. (Tr. 228-29). Plaintiff also has records from the Lakeside

Clinic covering July 11, 2002 to April 25, 2007. (Tr. 256-78). These records indicate anxiety and depression (Tr. 263, 266) among other complaints. (Tr. 256-78).

Plaintiff was seen at Mountain Lakes Behavioral Health Care for mental health reasons between June 23, 2005 and April 12, 2007. (Tr. 281-311). The notes from these visits show that her mood was consistently anxious; however, they also consistently show physical presentation and "thought/perceptual disturbances" within normal limits. Her speech was normal and her insight and judgment ranged from fair to good. (Tr. 281-95, 299-309).

During this time, Plaintiff underwent a psychiatric evaluation by Dr. Roza Cieszkowski. (Tr. 296-98). Dr. Cieszkowski noted Plaintiff's anxiety and described her as very emotional. However, she also found Plaintiff to be cognitively intact and possessing good judgment and insight. (Tr. 297). Dr. Cieszkowski's diagnosis included depressive disorder NOS, generalized anxiety disorder, and panic disorder without agoraphobia. (Tr. 298). Based on this diagnosis, Dr. Cieszkowski still determined Plaintiff to have a Global Assessment of Functioning ("GAF") score of 58. (Tr. 298).

Plaintiff's psychological state was evaluated by Dr. Mary Arnold on July 3, 2007. (Tr. 313). Dr. Arnold observed that Plaintiff appeared healthy and clean. She noted there was nothing odd about Plaintiff's behavior and that Plaintiff was not agitated. While Dr. Arnold found Plaintiff to be anxious and intermittently tearful, she also observed a full range of expressions and that Plaintiff was amused by some neutral interview items. She further found Plaintiff to be alert, oriented, and capable of understanding instructions and calculating simple math problems. Plaintiff's speech was fluid, she maintained good eye contact, and was capable of reaching goal ideas without tangential or circumstantial

thinking.  Dr. Arnold estimated Plaintiff's intelligence to be in the low average range. After considering Plaintiff's condition, Dr. Arnold diagnosed panic attacks with agoraphobia, PTDS [*sic*], provisional, personality disorder, NOS, hypertension, obesity, history of childhood/adult abuse, and socially avoidant. She also assigned Plaintiff a GAF score of 45. (*See* Tr. 313-16).

Plaintiff underwent another consultative evaluation on July 5, 2007 with Dr. John Lary. (Tr. 318). Dr. Lary ultimately diagnosed Plaintiff with "degenerative spinal disc disease, lumbar spine disc extrusion at L5-S1 with significant lumbar sensory radiculopathy, complaint of anxiety, depression, and panic attacks, hypertension, mitral valve prolapse by patient history, normal neurological examination, irritable bowel syndrome, and gastroesophageal reflux disease." (Tr. 322). He also stated that Plaintiff's "ability to sit, stand, walk, lift, carry, bend, and squat is impaired by lumbar disc disease and lumbar radiculopathy." (*Id*.). Despite these conditions, Dr. Lary still found that Plaintiff was able to flex her upper body at her waist by sixty degrees, hyperextend twenty degrees, and perform a normal straight leg raising test. (Tr. 321). Dr. Lary also observed that Plaintiff was able to walk normally, walk on her heels and toes, and squat and rise. (Tr. 321). In his opinion, he found Plaintiff's ability to reach, see, hear, speak, understand, and manipulate small objections unimpaired.  (Tr. 322).

Plaintiff received psychiatric treatment from Dr. Darren Gannuch between November 6, 2006 and February 4, 2008. (Tr. 376-87). During this time, Dr. Gannuch determined that Plaintiff suffered from a generalized anxiety disorder, and on June 29, 2007, assigned Plaintiff a GAF score of 68. (Tr. 376-77).

Dr. Gregory Ciaccio met with Plaintiff four times between May and August 2008. (Tr. 363-66), and once more on August 25, 2009. (Tr. 406). In the notes from Plaintiff's initial visit, Dr. Ciaccio documents numerous potential psychological disorders, including obsessive compulsive disorder and bipolar disease, and assigned Plaintiff a GAF score of around 50. (Tr. 366-67, 369). However, from the subsequent visits that followed, Dr. Ciaccio narrowed his analysis down to generalized anxiety disorder and depression. (Tr. 363-65, 406).

Dr. Ciaccio also completed a Mental Residual Functional Assessment of Plaintiff on November 25, 2008. (Tr. 371-74). In this evaluation, Dr. Ciaccio determined that Plaintiff was "markedly limited" in her ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; travel in unfamiliar places or use public transportation; maintaining social functioning; concentration, persistence, or pace.   However, Dr. Ciaccio further determined Plaintiff was either moderately or not significantly limited in the other remaining areas. (Tr. 371-73).

Finally, Plaintiff was seen at Lakeside Clinic from July 25, 2007 to December 19, 2008. (Tr. 393-403). The diagnoses from these visits are consistent with earlier opinions and show gastroesophageal reflux disease, hypertension, mitral valve prolapse, depression, and anxiety. (Tr. 393-96).

5

II.     **ALJ's Decision**

Disability under the Act is determined under a five-step analysis. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. Before proceeding to steps four and five, the ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. 404.1520(f). If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the

analysis proceeds to the fifth and final step.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

In this case, the ALJ first determined that Plaintiff has not engaged in substantial gainful employment since her onset date of disability. (Tr. 16). The ALJ also determined that Plaintiff suffers from the severe impairments of degenerative disc disease, affective disorders, anxiety-related disorders, and personality disorders (*Id*.), but that these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

The ALJ next determined that Plaintiff has the RFC:

> To perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). However, the claimant's light work must be that which only involves simple instructions, demands no more than two hours attention and concentration with a break, involves only occasional

> contact with supervisors and co-workers, no contact with
> the general public, in an environment where changes are
> infrequent and gradually introduced.  (Tr. 17).

The ALJ acknowledged that Plaintiff's symptoms were caused by an underlying medically determinable physical or mental impairment. (Tr. 18-19). However, the ALJ questioned Plaintiff's credibility concerning the intensity and limiting effects of her symptoms. (Tr. 19).  The ALJ concluded that Plaintiff was unable to perform her past relevant work, but considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 21-22).

To reach this conclusion, the ALJ relied upon the opinion of the vocational expert who testified that jobs exist for an individual with Plaintiff's limitations. (Tr. 22, 47). The vocational expert stated that such an individual could perform jobs such as the following: night cleaning crew of which more than 3,800 exist in the state of Alabama; material handler of which more than 2,900 exist in the state of Alabama; and wrapping/packaging of which more than 3,200 exist in the state of Alabama.  (Tr. 22).  Accordingly, the ALJ determined Plaintiff was not disabled.

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff contends that the ALJ committed reversible error by: (1) overlooking or failing to consider the opinions of two Social Security consultative examiners; (2) failing to accord controlling weight to the opinion of Dr. Gregory T. Ciaccio, her treating psychiatrist; and (3) failing to allow her counsel to ask the vocational expert a hypothetical question using the opinion of Dr. Ciaccio. (Pl.'s Mem. 10).

IV.     **Standard of Review**

The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Hand v. Callahan,* 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997). The court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel,* 185 F.3d 1211, 1213 (11th Cir. 1999).  Substantial evidence is more than a scintilla. The evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Hand,* 125 F.3d at 1440.

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.,* 21 F.3d 1064, 1066 (11th Cir. 1994). There is no

presumption that the Secretary's conclusions of law are valid. *Id.*

## V.   Discussion

After careful review, the court determines the ALJ's decision is due to be affirmed for the following reasons.

### A.   The ALJ Did Not Commit Error By Not Specifically Mentioning the Opinions of Drs. Arnold and Lary.

Plaintiff contends that the ALJ's failure to consider the opinions of two Social Security consultative medical examiners—Drs. Arnold and Lary—and the failure to state with particularity the weight given to these medical opinions is reversible error. (Pl.'s Mem. 10). Plaintiff claims that this absence is evidence that the ALJ was "unaware" of, simply "ignored," or "forgot" about these two opinions. (Pl.'s Mem 10-11). The court will address these arguments in relation to each medical examiner.

Plaintiff argues that the ALJ committed reversible error by not mentioning the report of consultative psychologist, Dr. Arnold. (Pl.'s Mem. 10). The ALJ has a duty to fully and fairly develop the record for both sides. *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  The ALJ also must state the weight given to different medical opinions. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). It is enough that an ALJ's decision is not a broad rejection that would lead a court to conclude that the ALJ did not consider the claimant's medical condition as a whole before making a decision. *Id*. Also, "[i]n evaluating the necessity for a remand, we are guided by whether the record reveals

evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir.1995).

The record contradicts Plaintiff's claim that the ALJ ignored or was not aware of Dr. Arnold's report. (Pl.'s Mem. 10). During the hearing, the ALJ specifically referred to Dr. Arnold's opinion and the GAF score of 45 she assigned Plaintiff. (Tr. 51-52). The ALJ then proceeded to explain to Plaintiff's counsel that he would take notice of the score and its implications. (Tr. 51). He also informed Plaintiff's counsel that such a score did not necessarily indicate that Plaintiff was unable to work. He explained that a score in the range of forty-one to fifty indicates serious symptoms or any serious impairment of social occupation and school functioning. However, the ALJ explicitly and correctly stated that there is no dispositive GAF score that automatically equates to a conclusion of inability to work.[1] (Tr. 51-52).

Because a GAF score is not dispositive on the issue of disability, when supported by substantial evidence the ALJ's decision will stand as long as it enables this court to conclude "that the ALJ considered her medical condition as a whole." *Dyer* at 1211. Here, there is no indication that the ALJ did not consider Plaintiff's medical condition as a whole. Dr. Arnold's opinion is consistent with Plaintiff's other psychological evaluations (which did not find Plaintiff disabled) and does not indicate disability other than through the non-dispositive GAF score.

_____

[1]The ALJ was correct that a low GAF score does not automatically indicate that a claimant is unable to work. Federal regulations state that while the GAF score is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association, "[i]t does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (2000). Therefore, the ALJ correctly found that the score was not controlling and Plaintiff's claim that "the ALJ just skips, ignores, or is possibly unaware that Dr. Arnold did a report" is unfounded. (Pl.'s Mem. 10).

Dr. Arnold observed that Plaintiff appeared healthy and clean. (Tr. 314). She noted that there was nothing odd about her behavior and that she was not agitated. (Tr. 314). While Dr. Arnold found that Plaintiff was anxious and intermittently tearful, she also noted a full range of expressions and that Plaintiff was amused by some neutral interview items. (Tr. 314). She found Plaintiff to be alert, oriented, and capable of understanding instructions and calculating simple math problems. (Tr. 314-15). Plaintiff's speech was fluid, she made good eye contact, and she was able to reach goal ideas without tangential or circumstantial thinking. (Tr. 315). Dr. Arnold estimated Plaintiff's intelligence to be in the low average range. (Tr. 315). None of these observations, however, denotes a debilitating mental condition. Therefore, the ALJ not specifically mentioning Dr. Arnold's findings in his decision did not create an evidentiary gap and is not an error.

Plaintiff also alleges that the ALJ committed reversible error by not explicitly discussing the opinion of Dr. Lary. (Pl.'s Mem. 11). Consistent with the discussion above, the ALJ's failure to explicitly mention the opinion of Dr. Lary is not an error as long as the decision is not a broad rejection that would lead a court to conclude that the ALJ did not consider Plaintiff's medical condition as a whole. *Dyer* at 1211. Plaintiff points to portions of Dr. Lary's opinion that state "[her] ability to sit, stand, walk, lift, carry, bend, and squat is impaired by lumbar disc disease and lumbar radiculopathy," and argues that this is evidence of her disability. (Pl.'s Mem. 10, Tr. 322). Of course, Plaintiff acknowledges, as she must, that this statement does not indicate the degree of impairment. (Pl.'s Mem. 10-11).

Although the above-referenced quote does indicate an impairment, when this statement is read in context with the rest of Dr. Lary's report it becomes clear that Plaintiff's impairment is not disabling. First, Dr. Lary initially described Plaintiff as a "generally healthy appearing white female in no acute distress." (Tr. 320). He described Plaintiff's back as having no kyphosis and back musculature that appears normal to inspection and palpation. (Tr. 321). He noted that Plaintiff was able to flex her upper body at her waist by sixty degrees, hyperextend twenty degrees, and that her straight leg raising test was normal. (Tr. 321). Dr. Lary observed that Plaintiff was able to: walk normally; walk on her heels and toes; and squat and rise. (Tr. 321). The only comment concerning a limitation in Plaintiff's ability to move was the fact that she used both arms to push herself upright from the squatting position. (Tr. 321). There is no indication that Plaintiff was disabled by the lumbar disc disease and lumbar radiculopathy that Dr. Lary diagnosed. (Tr. 322). Therefore, there is no evidentiary gap and the ALJ did not err by not specifically mentioning Dr. Lary's opinion.

> **B.      The ALJ Did Not Commit Error By Not Assigning Controlling Weight to the Opinion of Dr. Ciaccio.**

Plaintiff's argument concerning the appropriate weight to give Dr. Ciaccio's opinion is confusing at best. Plaintiff urges that the ALJ of committing reversible error by not according Dr. Ciaccio's opinion "controlling" or "great" weight. (Pl.'s Mem 10, 12, 16). However, concerning this issue, Plaintiff only cites cases that refer to the appropriate weight to assign a treating source. (Tr. 13). Plaintiff acknowledges that the ALJ determined that Dr. Ciaccio did not qualify as a treating source. (Pl.'s Mem. 15). Despite this knowledge, Plaintiff's brief continually refers to Dr. Ciaccio as the treating

psychiatrist. (Pl.'s Mem. 10, 12, 13). To use Plaintiff's own language from another section of the brief, Plaintiff "just skips, ignores, or is possibly unaware" that the ALJ explicitly determined that Dr. Ciaccio was not a treating source. (Pl.'s Mem 10).

After carefully examining Plaintiff's brief, the only logical conclusion the court can reach is that Plaintiff is making either one of two arguments: either, Plaintiff is arguing that, even though Dr. Ciaccio was not a treating physician, (1) his opinion still deserved controlling weight, or (2) at a minimum, his opinion was not given appropriate weight.

As to the first potential argument, Plaintiff's brief provides no legal authority to support that position. All of the authority that Plaintiff cites are rules for weighing a treating physician's opinion. (Pl.'s Mem 13). Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived. *Continental Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991). However, in order to thoroughly analyze every issue, the court will still briefly examine this claim.

Because Dr. Ciaccio was not a treating physician, his interactions with Plaintiff necessarily render him an examining physician. The ALJ has no obligation to give controlling or great weight to the opinion of an examining physician. *Russell v. Astrue*, 331 F. Appx. 678, 681-82 (11th Cir. 2009) (holding that the ALJ had good cause for affording little weight to an examiner's opinion where he appropriately found the claimant's other medical records failed to support the opinion and that the doctor's own examination contradicted his opinion). Therefore, if Plaintiff is arguing that Dr. Ciaccio's

opinion deserved controlling weight (even though he was not a treating physician), Plaintiff's argument is off the mark and the ALJ committed no error.

Plaintiff's other possible argument is that the ALJ erred in concluding that Dr. Ciaccio was not a treating source and therefore his opinion was not given appropriate weight. Once again, if this is the claim, then Plaintiff presents no argument addressing why it was a mistake for the ALJ to conclude that Dr. Ciaccio was not a treating source. No legal authority is cited in support of this contention. Plaintiff does not even set forth the standard to qualify as a treating physician, much less apply that standard to this case.

The Code defines a treating source as:

> your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502 (2000). This definition leaves discretion to the ALJ to make the ultimate determination of who qualifies as a treating source. The Code consistently uses permissive rather than mandatory language in this section. Specifically, the Code states that an ALJ "*may*" consider an acceptable medical source who has treated or evaluated a claimant only a few times or only after long intervals (*e.g.*, twice a year) to be a treating

source if the nature and frequency of the treatment and evaluation is typical for the claimant's condition(s). This language is clearly permissive and does not require an ALJ to consider a medical source who has only treated a claimant a few times to be considered a treating source.

In this situation, Plaintiff presents no explanation as to why the ALJ was wrong to treat Dr. Ciaccio as a non-treating source. Dr. Ciaccio only saw Plaintiff on a total of five occasions. (Tr. 363-70, 406). The last of these visits occurred after a gap in treatment of greater than one year. (Tr. 363, 406). Because Dr. Ciaccio only sporadically treated (or evaluated) Plaintiff, and as there were long intervals in between some of those sessions, it was well within the ALJ's discretion to decide whether or not to consider Dr. Ciaccio to be a treating source. Because the ALJ appropriately determined that Dr. Ciaccio was not a treating source, he was not obligated to give Dr. Ciaccio's opinion controlling weight. Therefore, the ALJ did not commit error by concluding that Dr. Ciaccio was not a treating source and by not according him controlling weight.

### C. Plaintiff Was Not Prejudiced When the ALJ Disallowed Plaintiff's Question to the Vocational Expert Regarding the Opinion of Dr. Ciaccio.

Finally, Plaintiff argues that the ALJ committed reversible error by not allowing her counsel to ask the vocational expert a hypothetical question regarding the opinion of Dr. Ciaccio. (Pl.'s Mem. 10). During the hearing, the ALJ would not allow Plaintiff's counsel to ask the vocational expert any hypothetical questions based on the Mental RFC form created by Dr. Ciaccio. (Tr. 48-49). The ALJ's reasoning for this decision was the subjective nature of the form's term "markedly limited." (Tr. 48). The  ALJ assured Plaintiff that Dr. Ciaccio's opinion would be considered and would be given appropriate

weight. He also informed Plaintiff that Dr. Ciaccio's opinion would not necessarily be considered a treating source. "[I]f Dr. [Ciaccio] is a treating source, it will get the weight a treating source deserves." (Tr. 49). The ALJ went on to explain that the form would have to be compared to Dr. Ciaccio's treatment notes to determine the consistency of his opinion. (Tr. 49).

The Code states that "[t]he administrative law judge may ask the witnesses any questions material to the issues and shall allow the parties or their designated representatives to do so." 20 C.F.R. § 404.950 (2010). In *Marin v. Commissioner of Social Security*, 535 F.Supp.2d 1263 (M.D. Fla. 2008), the ALJ prohibited Plaintiff's counsel from asking the vocational expert any questions that were not hypothetical. Plaintiff's counsel attempted to question the vocational expert regarding the factual basis for the statistics she had cited. The ALJ did not allow these questions. The court ultimately decided that this restriction prevented Plaintiff's counsel from conducting a meaningful cross-examination, *id*. at 1265, and was prejudicial to Plaintiff because the credibility of the vocational expert could not be tested. *Id*.

A similar issue arose in *Delker v. Commissioner of Social Security*, 658 F.Supp.2d 1340 (M.D. Fla. 2009). There, the ALJ prohibited Plaintiff's counsel from questioning a vocational expert concerning the opinion of a treating physician's mental RFC assessment. *Id*. at 1369. The treating physician found the claimant to be "markedly limited" in a number of categories on the form. *Id*. at 1356. The ALJ determined that this opinion did not deserve much evidentiary weight because it was both internally inconsistent and also inconsistent with earlier treatment notes. *Id*. at 1367. The ALJ also stated that it was not proper to question the vocational expert about this form because the

form did not define "markedly." Finally, the ALJ discounted the opinion expressed on the form because the physician only checked boxes and did not provide a medical explanation for the limitations. *Id*.

The claimant in *Delker* argued that this inability to question the vocational expert violated her due process rights. *Id*. at 1369. The court agreed and remanded the case. *Id*. at 1370. In doing so, the court acknowledged that there can be no violation of due process without a showing of prejudice. *Id*. The court specifically noted that "a reviewing court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id*. The *Delker* court next determined that the ALJ should not have stopped the questioning because the term "marked" was not defined on the form. *Id*. at 1371. However, this mistake by the ALJ did not end the discussion; the real issue was whether the claimant had been prejudiced by this action. *Id*. The court determined that the claimant in *Delker* had indeed been prejudiced. Because the ALJ had incorrectly discounted the opinion of the treating physician and then denied the claimant the ability to question the vocational expert concerning the physician's opinion, the ALJ had effectively prevented the claimant from obtaining substantial evidence that there were no jobs existing in the economy that she could perform. *Id*. The court found that this lack of information constituted a gap in the evidentiary record and prejudiced the claimant. *Id*.

The present case is remarkably similar to *Delker*. In both cases, the ALJ prevented the claimant's counsel from questioning a vocational expert about the opinion of a physician. Also in both cases, the ALJ decided that these doctors' opinions did not deserve the weight normally given to a treating source. Both ALJs did not allow

questioning of the vocational expert because of the subjective nature of the term "marked." But, again, just as in *Delker*, the key issue is this case is as follows: can Plaintiff make a showing of prejudice based upon the disallowance of the question to a vocational expert? The court concludes she can not, and on that basis *Delker* is distinguishable.

In *Delker*, the court determined that the ALJ erred by not giving the physician's opinion the weight of a treating source. *Delker* at 1369. Because the claimant's counsel was unable to question the vocational expert concerning the doctor's opinion, it created a gap in the evidentiary record. *Id*. at 1371. In this case, Plaintiff has presented no argument to show that the ALJ erred by determining that Dr. Ciaccio's was a non-treating source. Because this opinion was correctly given little evidentiary weight, the fact that Plaintiff's counsel was unable to question the vocational expert about the opinion did not result in prejudice. No evidentiary gap was created by the lack of this testimony. Therefore, the ALJ did not violate Plaintiff's due process rights by limiting the questioning of the vocational expert.

**IV.    Conclusion**

The court concludes that the ALJ's determination that Samatha Lynn Hankins is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum will be entered.

**DONE** and **ORDERED** this     24th     day of September, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE